The SULLIVAN COUNTY EDUCATION ASSOCIATION, Counter–Defendant, Appellee,

v.

Jack MAY et al., The Sullivan County Board of Education, Counter–Plaintiffs, Appellants.

Court of Appeals of Tennessee, Eastern Section.

Jan. 17, 1980.

Application for Permission to Appeal Denied by Supreme Court Sept. 2, 1980.

Joe W. Worley, Kingsport, for counter–plaintiffs–appellants.

Charles Hampton White, Nashville, for counter–defendant–appellee.

## OPINION

GODDARD, Judge.

In this interlocutory appeal, the Superintendent and the Board of Education of Sullivan County, Counter–Plaintiffs, Appellants, seeking to require a de–certification election under the provisions of the Educational Professional Negotiations Act, Chapter 55 of Title 49, Tennessee Code Annotated, appeal dismissal of their counter action against the Sullivan County Education Association, Counter–Defendant, Appellee. They insist that the Chancellor was incorrect in holding that such an election could not be held during the initial 24–month recognition period.

The facts material to this appeal are succinctly set out in the Appellants' brief as follows:

The Sullivan County Education Association was elected as collective bargaining representative for the professional employees of the Sullivan County Board of Education on December 8, 1978, by vote of 551 out of 951 persons voting (out of 1,031 eligible voters). On April 10, 1979, the SCEA requested contract bargaining negotiations with the Sullivan County Board of Education. Thereafter bargaining negotiations sessions were held through the month of August, 1979. On August 30, 1979 decertification petitions, signed by more than a majority of the professional employees of the Sullivan County Board of Education, were presented to the Board of Education and to the SCEA, pursuant to the requirements of Tenn.Code Ann. § 49–5515. At that time, upon request of the teacher presenting the petitions, and upon advice of Counsel, the Board of Education voted to suspend contract talks with the SCEA, while at the same time requesting an attorney general's opinion on the question of whether or not negotiating sessions were required during the pendency of a decertification election. An opinion was subsequently received from the Attorney General, holding that a decertification election could be held at any time and that during the pendency of decertification proceedings, continued negotiations were not required. The Board of Education appointed a person to serve on the decertification election committee as required by Tenn.Code Ann. § 49–5503, and called upon the SCEA to likewise appoint such a committee member which the SCEA has refused to do. On October 2, 1979, the SCEA instituted suit alleging that the Board of Education and Superintendent of Schools had committed certain unlawful acts as defined by the EPNA and asking the Court to decree that a decertification election could not be held and to order contract bargaining talks with the SCEA to resume. In response to this Complaint, the Counter–claim which is the subject of this appeal was filed.

The parties agree that the resolution of this appeal turns upon the legislative intent in enacting Chapter 55, Title 49. Two Sections, T.C.A. 49–5503 and 49–5515, hereinafter set out, are particularly significant:

*49–5503. Recognition of professional employee organization.*–(a) Upon the submission by one or more professional employees' organizations to the appropriate local board of education between October 1 and November 1 of any year, a request for recognition together with signed petition cards which constitute thirty percent

(30%) or more of the professional employees, said board of education and the requesting employees' organization shall appoint persons to serve on a special election committee for the purpose of conducting an election as provided in subsection (b) of this section.

(b) In the event one or more professional employees' organizations submit a request for recognition as provided in subsection (a), a special secret ballot election will be conducted among the eligible professional employees to determine which requesting organization, if any, shall represent such employees. A special election committee shall be formulated to set the date, establish the time and places, establish the procedure and supervise the election process, supervise the counting of ballots and file the results with the board of education and the requesting professional employees' organizations. The election committee shall be composed of one (1) person selected by each professional employees' organization which has filed with the board of education a request for recognition as provided in subsection (a) plus an equal number of persons selected by the board of education. The requesting professional employees' organizations and the board of education shall select the persons to serve on this election committee and shall notify the other parties of such selection no later than November 15. These persons so selected shall select an additional person to serve as chairman. In the event any party has not named such election committee persons or a majority agreement cannot be reached upon the person to serve as chairman by November 20, upon request of any of the selected persons to serve on this committee the state commissioner of education shall within five (5) calendar days name those persons which otherwise should have been named. The election committee may upon majority approval appoint other persons to assist in conducting the election. Motions before the election committee shall require a majority vote of the membership of the full committee. The election committee persons or persons appointed to assist in conducting elections pursuant to this section shall not be compensated for this service. Voting places and times selected by the election committee shall be convenient and accessible for all eligible professional employees. A majority vote of those voting shall be required to secure representation by a professional employees' organization. Such secret ballot shall provide for a person to vote for no representation by any professional employee organization. If a majority vote is not secured, a second election shall be held between those organizations or non-organizations receiving the first and second largest number of votes. The secret ballot election shall be held and the results transmitted to the board and the respective professional employee organizations prior to January 1 next. Those persons or organizations initiating the election shall be assessed the costs necessitated in conducting the election by the election committee chairman. The professional employees' organization receiving a majority vote shall be designated as exclusive representative effective January 1 next for a period of twenty–four (24) months.

(c) The initial recognition will be for twenty–four (24) months and will be automatically extended for additional twenty–four (24) month periods unless between October 1 and October 15 of the second twelve (12) months of any recognition period:

(1) The board of education challenges and substantiates that the recognized organization does not, in fact, possess a majority of the professional employees as paid members.

(2) Another professional employees' organization files application for recognition with the board of education together with signed petition cards which constitute a majority of the professional employees. In such event, an election between the competing organizations will be held according to the provisions of subsection (b) of this section.

(d) When a professional employees' organization has met the requirements of recognition in this section as the exclusively recognized organization, the board of education and such organization shall, in good faith, enter into negotiations, and if agreement is reached, enter into a memorandum of agreement based upon such negotiations and comply with such agreement according to the provisions of this chapter.

*49–5515. Decertification of professional employees' organization.*—When the board of education and the recognized professional employees' organization are presented with petitions bearing the signatures of a majority of the professional employees in the negotiating unit indicating they no longer desire to be represented by the recognized organization, an election committee shall be established according to the provisions of § 49–5503, and said elections committee shall conduct a decertification election by secret ballot in which all professional employees in the negotiating unit will have the choice of voting either for the continuation of recognition or for decertification of the recognized professional employees' organization. If a majority in the negotiating unit vote for decertification, the committee will thereupon notify the board of education and the recognized professional employees' organization that the organization is no longer the recognized representative. Those persons requesting a decertification election shall be assessed by the election committee chairman an amount adequate to pay for conducting the election. The terms and conditions of any existing memorandum of agreement shall continue in existence for the terms of said memorandum, except that any reference to the recognized professional employees' organization shall mean the individual employee. The board of education shall not be required to negotiate with any subsequently recognized professional employees' organization for the remaining period of the existing memorandum of agreement, but shall negotiate at the appropriate time as set forth herein with a subsequently recognized professional employees' organization for a future period.

It is the position of the Appellants that the statutory scheme provides for different treatment for an uprising from within than an assault from without, and that 49–5515 which contains no time constraint but, instead, uses language such as "are presented," and "shall be established," shows an intent that the election should be held without regard to time limitation. They further argue that to adopt the thesis advanced by the Association and adopted by the Chancellor would mean that an organization, which had lost the confidence of the membership to the extent that over 50 percent (theoretically even 100%) did not want it to represent them, could continue to do so for an extended period. They also point out that Section 49–5515 provides that "the terms and conditions of an existing memorandum of agreement shall continue in existence . . . ," arguing that the word "any" contemplates that no contract might have been agreed to, and that it is unlikely that the Legislature would have envisioned negotiations requiring 24 months to complete. Moreover, they say that if the Chancellor is correct, T.C.A. 49–5504, hereinafter set out, would be superfluous:

*49–5504. Rights accompanying formal recognition.*—A professional employees' organization recognized pursuant to this chapter shall be the exclusive representative of all the professional employees employed by that board of education for the purpose of negotiating. A challenge to recognition may be made only by the board of education or another professional employees' organization as provided in § 49–5503.

The Appellants point out that there are three ways that a professional employees' organization may be terminated as the bargaining agent. The first two are challenges by the School Board and by a rival organi-

zation, and the third by de–certification. They argue that by enacting Section 49–5504, and particularly the second sentence thereof, the Legislature clearly intended to treat them in a different manner, and that to adopt the position of the Appellee would render the second sentence superfluous and be in direct contradiction of T.C.A. 49–5515 which contains no time constraints.

On the other hand, the Appellee argues, first, that the language of T.C.A. 49–5515 which speaks of an election committee being "established according to the provisions of 49–5503," adopted by implication all the provisions of that section, including the 24–month rule; second–and we consider this to be its strongest position–that to construe the statute as insisted by the Appellants would mean that immediately after a professional organization had been certified, an election could then be called for de–certification, and the whole two–year period could be spent in holding elections to the neglect of the employees' duties to the students. The Appellee insists that such could not be the legislative intent.

We have reviewed the briefs of the parties and have noted similar federal and sister state legislation which, although helpful as background, sheds little light on legislative intent. Having done so, we are persuaded that it is more reasonable that the Legislature intended as insisted by the Appellants, and conclude that the Trial Court was in error in deciding otherwise.

We reach this determination because we think it unlikely that–had the Legislature intended as insisted by the Appellee–(1) it would have specifically designated a challenge by members of the bargaining unit by a different name and placed the provisions relating thereto some 12 sections distant from challenges by the Board of a rival organization, and (2) that the Legislature would have included employees–who presumably would not be as knowledgeable of the statute or have as available professional advice as would the School Board or a rival organization–in the same narrow time period within which to challenge the bargaining unit (15–day period every other October). In this regard, had the Legislature intended a time constraint for de–certification elections it could have provided such by the simple expediency of including them in Section 49–5504. Instead, however, it chose to treat a challenge by those within the unit as an entirely distinct and different type of proceeding.

In reaching this conclusion, we are aware that theoretically an election could be held only days after the bargaining organization was certified, but believe this highly improbable in light of the Tennessee provision which, contrary to those of most states, provides that a de–certification election may only be called by petition of the same number of employees (a majority) as is required to prevail in the election.

Finally, we recognize that determining legislative intent is–at best–a hazardous undertaking. However, in this case if we err, we choose to err in favor of freedom of choice by the employees. We also console ourselves by knowing that if we have misconstrued the legislative intent, the Legislature, which meets annually, will not hesitate to correct our erring ways.

For the foregoing reasons the issue on appeal is sustained, the Trial Court reversed and the cause remanded for such further proceedings as are appropriate. The costs of appeal are adjudged against the Appellee.

PARROTT, P. J. (E. S.), and SANDERS, J., concur.